# Exhibit A
# Complaint

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

ALLEGHENY _____ County

**For Prothonotary Use Only:**

Docket No:

TIME STAMP

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| STEPHANIE V. RIMEL | ALABAMA JANITORIAL & PAPER SUPPLY, LLC d/b/a A |

**Are money damages requested?** ☒ Yes   ☐ No

Dollar Amount Requested:
(check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☒ No        **Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Michael J. D'Amico (PA ID No. 310016)

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☒ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other _____

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other _____

- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other _____

- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

STEPHANIE V. RIMEL

Plaintiff,

vs.

ALABAMA JANITORIAL & PAPER
SUPPLY, LLC d/b/a ALJAN PAPER
SUPPLY; AMAZING PRODUCTS, INC.;
FIRST AND FOREMOST TRADING, LLC;
and WALMART, INC.

Defendants.

CIVIL DIVISION


No. GD

**COMPLAINT IN CIVIL ACTION**

Filed on behalf of Plaintiff, Stephanie V.
Rimel

Counsel of Record for this party:

Michael J. D'Amico, Esquire
PA ID No. 310016
mjd@damicolegal.com

Anthony J. D'Amico
PA ID No. 36501
ajd@damicolegal.com


D'AMICO LAW OFFICES, LLC
310 Grant Street
Suite 825, Grant Building
Pittsburgh, PA 15219
(412) 652-9300

**JURY TRIAL DEMANDED**

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| STEPHANIE V. RIMEL | CIVIL DIVISION |
| Plaintiff, | No. G.D. |
| vs. | |
| ALABAMA JANITORIAL & PAPER SUPPLY, LLC d/b/a ALJAN PAPER SUPPLY; AMAZING PRODUCTS, INC.; FIRST AND FOREMOST TRADING, LLC; and WALMART, INC. | |
| Defendants. | |

## <u>NOTICE</u>

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE OR KNOW A LAWYER, THEN YOU SHOULD GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

<u>IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.</u>

LAWYER REFERRAL SERVICE
THE ALLEGHENY COUNTY BAR ASSOCIATION
11th Floor, Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
412-216-5555

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| STEPHANIE V. RIMEL | CIVIL DIVISION |
| Plaintiff, | Code |
| vs. | No. GD: |
| ALABAMA JANITORIAL & PAPER SUPPLY, LLC d/b/a ALJAN PAPER SUPPLY; AMAZING PRODUCTS, INC.; FIRST AND FOREMOST TRADING, LLC; and WALMART, INC. | |
| Defendants. | |

## COMPLAINT IN CIVIL ACTION

**AND NOW** comes the Plaintiff, Stehpanie V. Rimel, by and through her attorneys, Michael J. D'Amico, Anthony J. D'Amico, and D'Amico Law Offices, LLC, and files the following Complaint of which the following is a statement:

1. The Plaintiff is Stephanie V. Rimel (hereinafter "Plaintiff"), an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 2010 Hayson Avenue, Pittsburgh, PA 15216.

2. Defendant, Alabama Janitorial & Paper Supply d/b/a ALJAN PAPER SUPPLY (hereinafter "ALJAN") is a limited liability company organized and existing under the laws of the state of Alabama with offices located at 51 Skyline Drive, Suite: A, Warrior, AL 35180.

3. At all times relevant hereto, ALJAN was a seller, distributor, and/or retailer of a drain cleaning product known as Liquid Fire ® (hereinafter "Liquid Fire" or "Product").

3

4.  Defendant, Amazing Products, Inc. (hereinafter "API"), is a corporation organized and existing under the laws of the Commonwealth of Kentucky with offices located at 6214 Strawberry Lane, Louisville, KY 40214.

5.  At all times relevant hereto, API was the manufacturer, seller, distributor, and/or retailer of Product.

6.  Defendant, First and Foremost Trading, LLC (hereinafter "FFT"), is a limited liability company organized and existing under the laws of the State of Florida with offices located at 2380 Drew Street, Clearwater, FL 33765.

7.  At all times relevant hereto, FFT was a seller, distributor, and/or retailer of Product.

8.  Defendant, Walmart, Inc. (hereinafter "Walmart"), is a corporation organized and existing under the laws of the state of Delaware with offices located at 702 SW 8th St. (Walton Blvd), Bentonville, AR 72716.

9.  At all times relevant hereto, Walmart was a seller, distributor, and/or retailer of Product.

10.  Hereinafter, ALJAN, API, FFT and Walmart will be referred to collectively as "Defendant companies."

11.  At all times relevant hereto Walmart hired, retained, and/or contracted with FFT and ALJAN to sell, ship, and/or deliver Product to Walmart customers who ordered Product from Walmart's on-line advertising.

12.  At all times relevant hereto Walmart contracted with FFT and ALJAN to sell Product for Walmart's advertised price with no additional charge for shipping.

13.  At all times relevant hereto, Walmart failed to establish required FFT and ALJAN to conditions and/or obligations that required FFT and ALJAN to ship Product in a reasonably

4

safe and adequate shipping containers designed to protect persons handling Product from chemical burns during shipping.

14. At all times relevant hereto, FFT and ALJAN were then and there engaged and acting within the scope of their authority to sell, ship, and/or deliver Product to Walmart customers who ordered Product from Walmart on-line.

15. At all times relevant hereto, FFT and ALJAN there acting in furthering Walmart's interests, activities, affairs, or business, and as such, Walmart is liable for any negligent acts or omissions of FFT and ALJAN.

16. Walmart should have recognized that shipping Product was likely to create a peculiar unreasonable risk of physical harm to others unless special precautions are taken by FFT and ALJAN for safe and adequate shipping of Product.

17. Walmart is liable for the injuries and damages suffered by Plaintiff because Walmart failed to provide as a condition of the agreement that allowed FFT and ALJAN to sell, ship and/or deliver Product to Walmart customers that FFT and ALJAN take precautions for safe and adequate shipping of Product.

18. Walmart is liable for the injuries and damages suffered by Plaintiff because Walmart failed to provide as a condition of the agreement that allowed FFT and ALJAN to sell, ship, and/or deliver Product to Walmart customers that FFT and ALJAN use reasonable care to provide to take precautions for safe and adequate shipping of Product.

19. Product is intended for use by members of the public to open clogged drains in sinks, toilets, and showers.

20. Product is sold via on-line sales by API, Walmart, FFT, and ALJAN to the public at-large in various sized red plastic bottles with a twist-off plastic cap.

5

21. The plastic bottle and plastic cap which contain Product were manufactured, designed, distributed and approved for usage by API as the container for Product.

22. The Material Safety Data Sheet (MSDS), which was prepared by API, lists the hazardous ingredients of Liquid Fire ® are sulfuric acid and rodine 31 A.

23. The MSDS fails to meet Occupational Safety and Health Administration requirements in that it does not state the percentage of sulfuric acid in Product.

24. The MSDS fails to meet OSHA requirements in that it does not state the percentage of rodine 31 A in Product.

25. The MSDS fails to meet OSHA requirements in that it does not provide shipping instructions for Product.

26. The MSDS for the product states, "**Contact with liquid, mist or vapor can cause immediate irritation or corrosive burns to all human tissue. Severity of burn is generally determined by the duration of exposure.**"

27. On a date and time before September 9, 2023, a resident of Victoria, VA (hereinafter "Purchaser") made an on-line purchase of a 32 oz bottle of Product from Walmart for $27.95 which included free shipping.

28. The order confirmation for the purchase states that Product will be delivered to the Purchaser by Monday, September 25, 2023.

29. The order confirmation for the purchase states, "Sold and shipped by ALJAN PAPER SUPPLY."

30. On or around a date prior to September 9, 2023, agents, servants, and/or employees of ALJAN or FFT placed a 32oz bottle of Product into a white plastic bag, placed a mailing label for shipment by the United States Postal Service ("USPS") to the Purchaser of Victoria, VA who made the on-line purchase of a 32 oz bottle of Product from Walmart.

31. The return address listed on the package that was being shipped to Purchaser indicates a return address of First and Foremost Trading, LLC, *illegible*, Vernon Hills, IL 60061.

32. On or around a date prior to September 9, 2023, agents, servants, and/or employees of ALJAN or FFT took the 32oz bottle of Product that was packaged in a white plastic bag, to USPS for mailing to the resident of Victoria, VA who made the on-line purchase of a 32 oz bottle of Product from Walmart.

33. On or around a date prior to September 9, 2023, when agents, servants, and/or employees of ALJAN or FFT took the 32oz bottle of Product that was packaged in a white plastic bag, to USPS for mailing to the resident of Victoria, VA who made the on-line purchase of a 32 oz bottle of Product from Walmart, they failed to place a hazardous material label on the package.

34. On or around a date prior to September 9, 2023, agents, servants, and/or employees of ALJAN or FFT affirmatively stated to a USPS employee that the package that was being mailed to the Walmart customer in Victoria, VA did not contain any hazardous material.

35. On September 9, 2023 at approximately 11:15 P.M., Plaintiff was working at her job as a mail handler for the United States Postal Service at its Warrendale Distribution Center located at 51 Pennwood Place, Suite 100, Warrendale, PA 15086-7831, which is in Allegheny County Pennsylvania.

36. On the date and time aforementioned, Plaintiff was carefully and lawfully performing her job, which included separating parcels that needed special handling in order for the parcels to be photographed and have their bar code scanned and read.

37. At or around the date and time aforementioned, Plaintiff gathered up several parcels that needed special handling, one of which was the bottle of Product hereinbefore referenced that was ordered from Walmart for intended delivery on or before September 25, 2023, to the purchaser in Victoria, VA.

38. The bottle of Product that Plaintiff gathered for special handling was packaged in a thin white plastic bag.

39. Plaintiff was not able to read the warning label attached to the bottle of Liquid Fire because the bottle and label were within an opaque white plastic shipping bag.

40. The white plastic shipping bag did not have any warning that the parcel that Plaintiff was handling contained hazardous material.

41. As Plaintiff was going about her job duties as aforesaid, she felt an excruciating burn under her arm on the left side of her body.

42. Plaintiff subsequently discovered that the burning she experienced was caused by Liquid Fire, which leaked from its bottle, through its white plastic packaging, and spilled onto the left side and other parts of her body causing the severe injuries and damages that are hereinafter set forth.

43. Plaintiff was transported by ambulance to Western Pennsylvania Hospital where she came under the care of the doctors and nurses in the burn unit of the hospital.

44. The full extent of Plaintiff's injuries is not fully known at this time. However, they included full thickness Third degree burns on her left forearm and upper and lower abdomen, as well as burns to her left breast, left leg, and left foot.

45. On September 13, 2023, Plaintiff returned and was admitted to Western Pennsylvania Hospital for emergent treatment which included, among other things, skin harvesting surgery followed by skin grafting surgery to the burns on Plaintiff's left forearm and cadaver skin grafting surgery to the burns on Plaintiff's left side.

46. On September 18, 2023, Plaintiff returned to West Penn Hospital per instructions to have her dressings changed.

47. In the course of having her dressings changed Plaintiff suffered syncope due to the pain.

48. On September 19, 2023, Plaintiff was returned to the operating room of West Penn Hospital for a debriding procedure where it was determined that the burns were more extensive, longer, and deeper than what the doctors originally believed and that the cadaver grafts had failed.

49. Due to these findings, on September 19, 2023, Plaintiff was returned to the operating room for new skin grafting surgery.

50. The conduct of the Defendants as set forth in the following Counts was outrageous, malicious, wanton, willful, oppressive, or shows reckless indifference to the interests of others such that punitive damages, as well as any compensatory damages, are required in order to punish the Defendants for their conduct and to deter the Defendants and others from committing similar acts.

51. Plaintiff believes and therefore avers that Defendants shipped the aforementioned bottle of Liquid Fire as set for above to save on shipping costs.

52. Plaintiff believes and therefore avers that Defendants shipped the aforementioned bottle of Liquid Fire as stated above despite knowledge that other employees of United Parcel Services and other shipping companies suffered chemical burns from leakage of Liquid fire in violation of hazardous materials regulations.

## COUNT I
## STRICT LIABILITY
### *Rimel vs. ALJAN, API, FFT and Walmart, collectively "Defendant companies."*

53. Plaintiff incorporates herein by reference the allegations contained in paragraphs above as though the same were set forth herein at length.

54. At the time the Product left the defendant companies' control, and/or was placed into the stream of commerce, it lacked elements necessary to make it safe for shipment and its intended use.

55. Each of the Defendant companies were in the chain of distribution of the Product and the Product reached the Plaintiff without substantial change from the condition it is in when it left the custody and control of each of the Defendant companies.

56. At all times relevant hereto, Product was defective for each of the following reasons:

   a. The bottle and the shipping package for the delivery of the Product to Purchaser was defective and inadequate for its intended purpose in that it leaked its contents and spilled onto Plaintiff's body causing Plaintiff to suffer the injuries hereinbefore set forth.

   b. The danger in handling Product was unknowable and unacceptable to the average or ordinary consumer.

   c. A reasonable person would conclude that the probability and seriousness of harm caused by Product outweigh the burden or costs of taking precautions.

      d.  The usefulness and desirability of the Product to the user and to the public as a whole are outweighed by the likelihood that Product will cause serious personal injury.

      e.  A substitute product was available which would meet the same need Product provided and not be as unsafe.

      f.  Means to eliminate the unsafe character of the product were available without impairing its usefulness or making it too expensive to maintain its utility.

      g.  A person handling Product did not have the ability to avoid danger by the exercise of care.

      h.  Product did not come with adequate warnings or instructions for safe handling and shipping of Product.

      i.  The Product and its packaging malfunctioned which allowed the Products contents to leak onto Plaintiff's body.

57. As the direct, proximate, and legal result of the defective condition of Product, for which Defendant companies are strictly liable, Plaintiff suffered injuries hereinbefore described all of which may be permanent in nature.

58. As the direct, proximate, and legal cause of the defective condition of Product, for which Defendant companies are strictly liable, Plaintiff suffered the following damages, all of which are serious and permanent in nature:

      (a)    Great pain, suffering, inconvenience, embarrassment, mental anguish, and loss of enjoyment of life's pleasures;

      (b)    Plaintiff has been or will be required to expend large sums of money for medical attention, hospitalization, and medical supplies;

(c)     Plaintiff general health, strength and vitality have been impaired.

(d)     Emotional harm and depression.

(e)     Plaintiff has suffered disfiguring scaring on parts of her various parts of her body.

WHEREFORE, Plaintiff brings this suit against Defendants companies to recover compensatory damages in excess of the jurisdiction of the Board of Arbitrators of this Court and in excess of Fifty Thousand ($50,000.00) Dollars, and punitive damages in an amount sufficient to punish and deter Defendants from similar conduct in the future.

### COUNT II
### NEGLIGENCE
### *Rimel vs. Defendant Companies*

59. Plaintiff incorporates herein by reference the allegations contained in paragraphs above as though the same were set forth herein at length.

60. Defendant companies, individually and/or through the acts and/or omissions of its agents, servants, and/or employees breached the duty of care that it owed to Plaintiff and was guilty of negligence in each of the following respects:

a.   When the Product left the custody and control of each of the Defendant companies, it was not reasonably packaged so as to prevent leakage of the contents of the Product out of its container and packaging.

b.   Each of the Defendant companies failed to institute adequate and reasonable quality control so as discover defects in the bottle, the bottles, lid, and packaging that permitted leaking of the Products content.

c.  The shipment was improperly packaged, not accompanied by a declaration of dangerous goods, and not properly labeled to indicate the hazardous contents.

d.  In failing to provide emergency response information with the package.

e.  In failing to provide adequate instructions to shippers and persons who handled the package on the requirements for handling of hazardous materials.

f.  In using inner packaging that was insufficient to meet performance requirements to prevent leakage out of the bottle.

g.  In using outer packaging that was insufficient to meet performance requirements to prevent leakage out of the outer packaging.

h.  In failing to follow current good design and manufacturing practices to prevent Product from leaking from its inner and outer containers during shipping.

i.  In failing to adequately test the bottle to discover whether it had areas susceptible to leak.

j.   In failing to conduct adequate testing of the outer shipping packaging to discover whether it has areas susceptible to leak.

k.  In failing to provide shipping instructions so as to prevent or minimize dangers to persons handling Product during shipping.

l.  In failing provide adequate warning or instructions to persons handling Product of the hazardous and caustic contents of Product so handlers of Product could reduce or eliminate the risk of chemical burns.

m. In manufacturing, selling, marketing, and shipping Product with the above-stated defects that posed an unreasonable risk of harm to persons handling Product during shipping.

13

n.  In failing to correct defects in the bottle, the package, shipping container, and/or the shipping instructions so as to prevent leakage and personal injury to persons handling the Product during shipping after Defendant companies had prior notice of shipping handlers suffering chemical burns from leakage of the contents of the package.

o.  In violating the laws of the United States as they relate to shipping of hazardous Products via USPS.

p.  In advertising free shipping of Product so as to entice purchasers to buy Product on-line at a time when Defendant companies did not have a reasonably safe and legal way to ship Product to on-line customers.

61. As the direct, proximate, and legal result of the defendant's negligence as described above, plaintiff suffered injuries hereinbefore described all of which may be permanent in nature.

62. As the direct, proximate, and legal result of the aforesaid injuries, Plaintiff has sustained the following damages:

(a)   Great pain, suffering, inconvenience, embarrassment, mental anguish, and loss of enjoyment of life's pleasures;

(b)   Plaintiff has been or will be required to expend large sums of money for medical attention, hospitalization, and medical supplies;

(c)   Plaintiff general health, strength and vitality have been impaired.

(d)   Emotional harm and depression.

WHEREFORE, Plaintiff brings this suit against Defendant companies to recover compensatory damages in excess of the jurisdiction of the Board of Arbitrators of this Court and

14

in excess of Fifty Thousand ($50,000.00) Dollars, and punitive damages in an amount sufficient to punish and deter Defendants from similar conduct in the future.

## COUNT III
### INHERENTLY DANGEROUS SUBSTANCE
*Rimel vs. Defendant Companies*

63. Plaintiff incorporates herein by reference the allegations contained in paragraphs above as though the same were set forth herein at length.

64. Defendant companies manufactured, sold, marketed and/or placed into the stream of commerce an inherently dangerous Product which caused chemical burns as hereinbefore set forth.

65. Defendant companies were required to use the highest standard of care, using every reasonable precaution to avoid injury to everyone lawfully handling Product.

66. Defendant companies, individually or through the acts and/or omissions of its agent, servant, and/or employee, breached its duty to use the highest standard of care, using every reasonable precaution to avoid injury to everyone lawfully handling Product.

67. As the direct, proximate, and legal result of the Defendant companies' failure to use highest standard of care, using every reasonable precaution to avoid injury to everyone lawfully handling Product the as described above, Plaintiff suffered injuries hereinbefore described all of which may be permanent in nature.

68. As the direct, proximate, and legal result of the aforesaid injuries, Plaintiff has sustained the following damages:

(a) Great pain, suffering, inconvenience, embarrassment, mental anguish, and loss of enjoyment of life's pleasures;

(b)      Plaintiff has been or will be required to expend large sums of money for

medical attention, hospitalization, and medical supplies;

(c)      Plaintiff general health, strength and vitality have been impaired.

(d)      Emotional harm and depression.

WHEREFORE, Plaintiff brings this suit against Defendant companies to recover

compensatory damages in excess of the jurisdiction of the Board of Arbitrators of this Court and

in excess of Fifty Thousand ($50,000.00) Dollars, and punitive damages in an amount sufficient

to punish and deter Defendants from similar conduct in the future.

### COUNT IV
### VIOLATION OF HCS GOVERNMENTAL REGULATION
### *Rimel vs. Defendant Companies*

69. Plaintiff incorporates herein by reference the allegations contained in paragraphs above as

though the same were set forth herein at length.

70. Under   Pennsylvania   law,   the violation of   a   governmental   safety   regulation

constitutes negligence *per se* if the regulation 'was, in part, intended to protect the interest

of another as an individual [and] the interest of the plaintiff which was invaded, was one

which the act intended to protect. *Id.* at 563 (citing *Majors v. Brodhead Hotel*, 416 Pa. 265,

205 A.2d 873, 875 (Pa. 1965)). *Cabiroy v. Scipione*, 767 A.2d 1078, 1081 (Pa Super 2001).

71. At all times relevant hereto, The Hazard Communication Standard (HCS) (29 CFR

1910.1200(g)), revised in 2012, required that the chemical manufacturer, distributor, or

importer provide Safety Data Sheets (SDSs) (formerly MSDSs or Material Safety Data

Sheets) for each hazardous chemical to downstream users to communicate information on

these hazards.

72. At all times relevant hereto failed to comply with each of the provisions of HCS and as such it is negligent *per se*:

    a.  Safety precautions for safe handling, storing, and transporting Product;

    b.  Safe handling practices, and emergency control measures; and

    c.  The concentration (i.e., exact percentage) of all ingredients which are classified as health hazards.

73. As the direct, proximate, and legal result of the defendant's failure to comply with the requirements of HCS the as described above, plaintiff suffered injuries hereinbefore described all of which may be permanent in nature.

74. As the direct, proximate, and legal result of the aforesaid injuries, Plaintiff has sustained the following damages:

    (a)    Great pain, suffering, inconvenience, embarrassment, mental anguish, and loss of enjoyment of life's pleasures;

    (b)    Plaintiff has been or will be required to expend large sums of money for medical attention, hospitalization, and medical supplies;

    (c)    Plaintiff general health, strength and vitality have been impaired.

    (d)    Emotional harm and depression.

WHEREFORE, Plaintiff brings this suit against Defendant Companies to recover compensatory damages in excess of the jurisdiction of the Board of Arbitrators of this Court and in excess of Fifty Thousand ($50,000.00) Dollars, and punitive damages in an amount sufficient to punish and deter Defendants from similar conduct in the future.

### COUNT V
### VIOLATION OF POSTAL SERVICE GOVERNMENTAL STATUTE
### *Rimel vs. Defendant Companies*

75. Plaintiff incorporates herein by reference the allegations contained in paragraphs above as though the same were set forth herein at length.

76. Pursuant to 18 U.S.C. 1716, all matter that is outwardly or of its own force dangerous or injurious to life, health, or property is nonmailable. The knowing deposit of such matter in the mail is a crime punishable by fine, imprisonment, and/or other penalty.

77. By the acts and or omissions of defendant companies, acting individually or through agents, servants, or employees, of one or more of the co-Defendants knowingly deposited nonmailable mail into the mail and thus violated the above-stated statute and are negligent *per se.*

78. Pursuant USPS Interim Final Rule 39 CFR Part 111, Effective date: June 6, 2022, USPS customers are required to separate all hazardous materials (HAZMAT), requiring marks and labels, from other non-hazardous materials when offering them to the U.S. Postal Service for shipment.

79. Hazardous material-containing packages must be clearly marked on an exterior side as "HAZMAT."

80. The HAZMAT designation on package allows postal personnel to separate hazardous materials from non-hazardous materials throughout at all points within the mail stream.

81. At all times relevant hereto failed to comply with each of the provisions of HCS and as such it is negligent *per se*:

   a. Safety precautions for safe handling, storing, and transporting Product;

   b. Safe handling practices, and emergency control measures; and

   c. The concentration (i.e., exact percentage) of all ingredients which are classified as health hazards.

82. As the direct, proximate, and legal result of the defendant's failure to comply with the requirements of HCS the as described above, plaintiff suffered injuries hereinbefore described all of which may be permanent in nature.

83. As the direct, proximate, and legal result of the aforesaid injuries, Plaintiff has sustained the following damages:

   (a)   Great pain, suffering, inconvenience, embarrassment, mental anguish, and loss of enjoyment of life's pleasures;

   (b)   Plaintiff has been or will be required to expend large sums of money for medical attention, hospitalization, and medical supplies;

   (c)   Plaintiff general health, strength and vitality have been impaired.

   (d)   Emotional harm and depression.

   WHEREFORE, Plaintiff brings this suit against Defendant companies to recover compensatory damages in excess of the jurisdiction of the Board of Arbitrators of this Court and in excess of Fifty Thousand ($50,000.00) Dollars, and punitive damages in an amount sufficient to punish and deter Defendants from similar conduct in the future.

## COUNT VI
### FRAUD
***Rimel vs. Defendant Companies***

84. Plaintiff incorporates herein by reference the allegations contained in paragraphs above as though the same were set forth herein at length.

85. By the acts and or omissions of defendant companies, acting individually or through agents, servants, or employees, of one or more of the co-Defendants:

a) knowingly and willfully made a material factual misrepresentation that that the package did not contain hazardous material to an employee of the USPS in order to have the package placed in the USPS mail.

b) the USPS, acting through an agent, servant and/or employee, relied upon the aforesaid factual misrepresentation and accepted the package for delivery by the USPS whereby the package came into contact with Plaintiff.

86. As the direct, proximate, and legal result of the defendant companies' fraud as described above, plaintiff suffered injuries hereinbefore described all of which may be permanent in nature.

87. As the direct, proximate, and legal result of the aforesaid injuries, Plaintiff has sustained the following damages:

(a)     Great pain, suffering, inconvenience, embarrassment, mental anguish, and loss of enjoyment of life's pleasures;

(b)     Plaintiff has been or will be required to expend large sums of money for medical attention, hospitalization, and medical supplies;

(c)     Plaintiff general health, strength and vitality have been impaired.

(d)     Emotional harm and depression.

WHEREFORE, Plaintiff brings this suit against Defendant companies to recover compensatory damages in excess of the jurisdiction of the Board of Arbitrators of this Court and in excess of Fifty Thousand ($50,000.00) Dollars, and punitive damages in an amount sufficient to punish and deter Defendants from similar conduct in the future.

Respectfully submitted,
D'AMICO LAW OFFICES, L.L.C.

By _____
Anthony J. D'Amico, Esquire
Michael J. D'Amico, Esquire
Attorneys for Plaintiff

20

## **VERIFICATION**

COMMONWEALTH OF PENNSYLVANIA          )
                                      )
                                      )
                                      )
                                      )
COUNTY OF ALLEGHENY                   )


The undersigned, being a party to the instant action, states that the foregoing averments are true and correct based upon his/her personal knowledge or information and belief and that the facts contained therein are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsifications to authorities.

x _Stephanie Rimel_ .