IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHANIE V. RIMEL,

               *Plaintiff,*

    v.

ALABAMA JANITORIAL & PAPER
SUPPLY, LLC., AMAZING PRODUCTS,
INC., FIRST AND FOREMOST TRADING,
LLC, and WALMART, INC.,

               *Defendants.*

Civil Action No. 23-cv-2020

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

    Plaintiff Stephanie V. Rimel ("Rimel"), a United States Postal Service mail handler, brought an action asserting several state-law claims arising out of injuries that she incurred when she came into contact with a chemical leaking from a mailed package. The action was removed to this Court. (ECF No. 1). She brings the following claims against all Defendants: Count I – Strict Liability; Count II – Negligence; Count III – Inherently Dangerous Substance; Count IV – Violation of HCS Governmental Regulation; Count V – Violation of Postal Service Governmental Statute; and Count VI – Fraud. (ECF No. 1-2). Defendants Alabama Janitorial & Paper Supply, LLC d/b/a ALJAN PAPER SUPPLY ("ALJAN") and Amazing Products, Inc. ("API") filed partial motions to dismiss all claims except for the negligence claim asserted at Count II of Rimel's complaint ("Complaint"). (ECF Nos. 16 and 29). Defendant Walmart, Inc. ("Walmart") filed a motion to dismiss all claims. For the reasons set forth below, the Court holds that Rimel may proceed on Count II (negligence) against Defendants. (ECF No.4).

Counts I, III, IV, V and VI against ALJAN, API, and Walmart will be dismissed.  The Court will hold for another day the question of whether punitive damages may be appropriate.

## I.   FACTUAL BACKGROUND

The relevant facts, as alleged in the Complaint, are straightforward.  Rimel was a mail handler for the United States Postal Service at a distribution center in Warrendale, Pennsylvania. She suffered chemical burns on her arm and left side of her body after moving a parcel of a bottle in a thin white plastic bag.  She was transported via ambulance to the hospital where she was treated at a burn unit for burns to her left forearm, upper and lower abdomen, left breast, left leg and left foot.  Rimel alleges that she suffered complications relating to the burns and had to undergo invasive remediation, including skin grafting.  (ECF No. 1-2, p. 9-11).

Rimel pleads that the chemical that caused her burns is a drain cleaning product known as Liquid Fire.  It was manufactured and distributed by API.  She further pleads that the product was placed in the mail when it was purchased from ALJAN on Walmart's website.  She alleges that it was mailed by ALJAN or defaulted Defendant First and Foremost Trading, LLC. Whoever packaged and shipped the product failed to affix any indication that the package contained hazardous material.  (*Id.* at 6-12).

## II.   STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff.  *See Doe v. Princeton Univ.*, 30 F.4th 335,

340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.   ANALYSIS

Walmart moves to dismiss all of the counts Rimel has asserted against it, and API and ALJAN move to dismiss all counts against them except for Count II (negligence). The Court will address each count.

### A.   Rimel has not pled a cognizable claim for strict products liability under Pennsylvania law.

Defendants ALJAN, API, and Walmart move to dismiss Count I of the Complaint, arguing that Rimel cannot, as a matter of law, maintain a claim for strict products liability

3

because she was not an end or intended user of the Liquid Fire product that caused her harm and, therefore, she cannot maintain a strict products liability claim under Pennsylvania law.[1]

In 1966, the Supreme Court of Pennsylvania adopted the framework for strict products liability set forth at Section 402A of the Restatement (Second) of Torts. *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966). Section 402A states:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>> (a) the seller is engaged in the business of selling such a product, and
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) Torts § 402A (1965). The continuing vitality of this restatement in Pennsylvania tort law was called into question after a series of Pennsylvania Supreme Court decisions seemingly flirted with its abandonment and the possibility of adopting the products liability provisions of the Restatement (Third) of Tort. Indeed, the trend away from § 402A of Restatement (Second) seemed to be such a safe bet that the United States Court of Appeals for

---

[1]  In a diversity case such as this one, the Court is required to apply the choice of law rules of the forum state. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Pennsylvania choice-of-law rules, the first step involves assessing whether a conflict exists between the substantive law of multiple jurisdictions. *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 404 (3d Cir. 2016). But here, the parties have identified no such conflict and have litigated this case under Pennsylvania substantive law. (*See* ECF Nos. 1-2, 5, 12, 17, 18, 20-21, 29, and 31-32). Therefore, the Court will assume Pennsylvania substantive law applies. *See Austin Powder Co. v. Popple Const. Inc.*, 167 F. App'x 931, 934 n. 1 (3d Cir. 2006) (where "parties have not addressed what law applies" and "cite only Third Circuit and Pennsylvania cases," courts may assume that Pennsylvania law applies without undertaking choice-of-law analysis). Substantive issues should be decided as the Pennsylvania Supreme Court "would rule if it were deciding this case." *Auto-Owners Ins. Co.*, 835 F.3d at 403 (quoting *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91–92 (3d Cir. 2008)).

the Third Circuit predicted that, when faced with the next-available opportunity, the Pennsylvania Supreme Court would abandon its adherence to the Restatement (Second) and formally adopt the products liability framework outlined in the Restatement (Third). *Covell v. Bell Sports, Inc.*, 651 F.3d 357 (3d Cir. 2011). The Pennsylvania Supreme Court had the opportunity to address the state of the Commonwealth's products liability law in *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014). To the surprise of many, it declined to adopt Restatement (Third). Rather, while reforming certain aspects of its approach to product liability claims, the Pennsylvania Supreme Court upheld the Commonwealth's general adherence to the Restatement (Second). It ruled that, "Pennsylvania remains a Second Restatement Jurisdiction." *Tincher*, 104 A.3d at 357.

The provisions of Restatement (Second) at issue in this case are those that appear to limit the ability to maintain such a claim to the "ultimate user or consumer" of the product. Restatement (Second) Torts § 402A(a) (1965). Defendants argue that Pennsylvania law, incorporating § 402A(a), precludes a cause of action in strict products liability for "bystanders"—i.e., anyone not an intended end-user of the product. Rimel counters by citing cases applying Pennsylvania law that appear to allow non-end users to assert a strict liability claim. The Court concludes that Rimel is not in the class of persons entitled to bring a claim for strict products liability under § 402A.

While not controlling precedent, the Court finds the late Senior United States District Judge Terrence F. McVerry's opinion in *D'Antonio v. FMC Tech., Inc.*, No. 2:16-cv-703, 2016 WL 7324151 (W.D. Pa. Sept. 30, 2016), to be instructive and persuasive. Having reviewed the issue in-depth, the Court finds it to be a good post-*Tincher* summary of Pennsylvania law with respect to bystander liability under § 402A.

5

In *D'Antonio*, the plaintiff was a truck driver who was injured when a piece of a product he was loading onto a truck fell and struck him. He brought a strict products liability claim under § 402A. In response to the defendant's motion to dismiss, the plaintiff argued (as Rimel does here) that certain Pennsylvania cases appear to have permitted strict products liability claims to be maintained by those other than the direct end user and that, in any event, he was a contemplated "user or consumer" because of the role he played in transporting the product to its final user. *Id.* at *2. Senior District Judge McVerry dismissed the strict liability claim explaining, "Mr. D'Antonio was loading the product onto a truck to be transported to its ultimate buyer—a customer in the oil and gas industry, which would then put it to its intended use in the oil or gas extraction process. In this Court's view, that removed him from the scope of § 402A's definition of "ultimate end user or consumer."" *Id.* (collecting cases). While he recognized that some Pennsylvania cases appear to have applied § 402A more broadly, "none of the cases allowing recovery involved 'persons who [load or] unload items during the course of their transportation to [ ] consumers.]" *Id.* at *3 (citation omitted). This is because "[t]he rationale is that strict liability is designed to protect users and consumers (and perhaps those who might be in close proximity to them), ***not the people who help bring a product to market***." *Id.* (emphasis added).

The Court has reviewed the cases cited by Rimel arguing for a broader application of § 402A (some of which were examined by Senior District Judge McVerry in *D'Antonio*) and reaches the same conclusion—they are readily distinguishable and inapplicable. In *Webb*, the plaintiff brought a strict liability claim after being injured by an exploding beer keg that was purchased by his father and in the process of being tapped by his brother. The trial court dismissed the action. On appeal, the Pennsylvania Supreme Court formally adopted § 402A and

remanded with the instruction that the plaintiff be permitted to amend the allegations in the complaint to reflect the adoption of § 402A. In doing so, the implication given by the Pennsylvania Supreme Court's decision was that the plaintiff's claim was facially tenable in light of § 402A. *Webb*, 220 A.2d at 854-55.

Rimel also cites the Pennsylvania Superior Court's decision in *Pegg v. Gen. Motors Corp.*, 391 A.2d 1074 (Pa. Super. 1978). Pegg was injured while a passenger in the car of his friend, William Parsons. Parsons was an employee of the City of Pittsburgh and had taken from the City a quantity of a chemical used to sanitize its swimming pools. During the ride, the chemicals unexpectedly burst into flames and the resulting fire injured both Parsons and Pegg. *Id.* at 1077. After the trial court dismissed Pegg's products claim against the chemical's manufacturer, the Superior Court reversed, citing to § 402A. In doing so, the Superior Court explained that "no reason appears to distinguish between Pegg, who did not buy the product, and someone who did buy the product." *Id.* at 1079.

Rimel also relies on the decision of the Third Circuit in *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38 (3d Cir. 2009), where the court applied Pennsylvania law and permitted a claim for strict products liability by a child who was injured when her grandfather backed his tractor (which lacked "back-over" protection) over her foot. Citing to *Webb* and *Pegg*, the Third Circuit held that nothing in § 402A precluded the strict products liability claim brought on behalf of the child—even though she was only a bystander. In doing so, the Court looked both to the then-current state of Pennsylvania law *and* predicted that the Pennsylvania Supreme Court would

likely adopt the products liability provisions of Restatement (Third) of Torts and, therefore, undertook an extensive examination of the issue under those provisions.[2] *Id.* at 45-61.

Rimel's claim is distinguishable in key areas from *Webb, Pegg*, and *Berrier*. In *Webb* and *Berrier,* the plaintiff was not the purchaser or the user of the product, but was injured when the end user (or, as in *Webb*, someone to whom the purchaser entrusted the product) was using the product. Second, in both cases, the injury was caused during the use of the product—either tapping the beer keg or running the lawnmower. The situation in *Pegg* is slightly different because Pegg was not injured during the use of the swimming pool chemical, but during its transport in Parson's car. Further, Parsons was not the purchaser—he took it from the purchaser and end user (the City) and intended to pass it off to another user. Pegg was injured post-market/end-user, not while the product was being brought to market or to its ultimate user. Pennsylvania law may permit a cause of action for strict liability to bystanders injured by a product during its intended use or that otherwise arise in the consumer context. As Senior District Judge McVerry reasoned in *D'Antonio*, none of the cases cited by Rimel extend such a claim to those in the supply chain bringing a product to the consumer. *See Ellis v. Chicago Bridge & Iron Co.*, 376 A.2d 906 (Pa. Super. 1988).[3]

---

[2] As explained above, the prediction turned out to be incorrect as the Pennsylvania Supreme Court expressly rejected the adoption of the Restatement (Third) and reiterated the Commonwealth's adherence to Restatement (Second).

[3] In *Ellis*, the Pennsylvania Superior Court held that a manufacturer of large, heavy, steel plates was not strictly liable for injuries sustained by a longshoreman killed when the product shifted in the course of loading it for transportation to its ultimate purchaser. The court based its decision on the determination that the product was not defective because, as the comments to Section 402A provide, a "defective condition" is "a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." *Id.* at 914 (citing § 402A, comment g). The concurring opinion focused on § 402A's limitation of liability to an "ultimate user or consumer" explaining that a person in the chain of transportation of a product does not fall within the ambit of § 402A. *Id.* at 915-17.

In this case, Rimel was not an ultimate user or consumer of the product that she alleges caused her injury. She was not downstream of the product after it reached its ultimate user or consumer, nor was she injured through the use of the product. Rather, she was injured in the process of transporting the product to its ultimate consumer. This is outside the scope of § 402A. Rimel does not have a cause of action for strict products liability under Pennsylvania law. Count I against Defendants ALJAN, API, and Walmart will be dismissed with prejudice.

**B.      There is no cause of action for "inherently dangerous substance."**

At Count III of the Complaint, Rimel asserts a claim for "inherently dangerous substance." (ECF No. 1-2, pp. 17-18). Defendants ALJAN, API, and Walmart correctly argue that there is no recognized cause of action for "inherently dangerous substance." Rimel's responsive brief concedes as much. She explains that this count is actually one of negligence. (*See* ECF No. 12, p. 12; ECF No. 20, p. 10; ECF No. 31, p. 9). Rimel asserts a claim of negligence at Count II of her Complaint. (ECF No. 1-2, pp. 14-17). There is no need for Rimel to have duplicative claims in successive counts. Count III against Defendants ALJAN, API, and Walmart will be dismissed with prejudice.

**C.      Counts IV and V are not recognized causes of action.**

Counts IV and V of the Complaint assert claims for "Violation of HCS Governmental Regulation" and "Violation of Postal Service Governmental Statute," respectively. (ECF No. 1-2, pp. 18-21). Defendants ALJAN, API, and Walmart correctly contend that these are not recognized, stand-alone, causes of action. Rimel acknowledges that they are not independent causes of action, but rather, that they represent her attempt to assert a claim for negligence per se.

In Pennsylvania, negligence per se is, itself, not a stand-alone cause of action.[4]  It is a theory of negligence encompassed within a negligence claim.  *See In re Rutter's Inc. Data Security Breach Litigation*, 511 F. Supp. 3d 514, 531 (M.D. Pa. 2021) ("Where a plaintiff alleges negligence and negligence per se as separate causes of action, courts within the Third Circuit routinely dismiss the negligence per se claim as subsumed within the standard negligence claim," even when applying Pennsylvania law.  (citing *Sipp-Lipscomb v. Einstein Physicians Pennypack Pediatrics*, No. 20-cv-1926, 2020 WL 7353105, *1 (E.D. Pa. Dec. 9, 2020)); *see also Cabiroy v. Scipione*, 767 A.2d 1078, 1081 (Pa. Super. 2001) (noting that negligence per se is not "an independent basis of tort liability but rather establishes, by reference to a statutory scheme, the standard of care appropriate to the underlying tort.").  Consequently, Counts IV and V against Defendants ALJAN, API, and Walmart will be dismissed with prejudice.

**D.    Rimel has not pled a cognizable fraud claim**

Count VI of the Complaint asserts a claim for fraud.  (ECF No. 1-2, pp. 21-22).  It alleges that "one or more of the co-Defendants: a) knowingly and willfully made a material factual misrepresentation that [ ] the package did not contain hazardous material to an employee of the USPS in order to have the package placed in the USPS mail. b) the USPS, acting through an agent, servant and/or employee, relied upon the aforesaid factual misrepresentation and accepted the package for delivery by the USPS whereby the package came into contact with Plaintiff." (ECF No. 1-2, p. 22).  Defendants ALJAN, API, and Walmart argue that the Complaint does not meet the heightened pleading standard for claims of fraud.  The Court agrees.

---

[4] Negligence per se is a doctrine that "establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm." *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014).

Fed. R. Civ. P. 9(b) ("Rule 9(b)") states that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake."   Fed. R. Civ. P. 9(b).   This rule serves to give defendants "notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).  "Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his [or her] damage." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (citation omitted).  "Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citation omitted).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* (citation omitted).

Rimel's bare bones allegations at Count VI fall short of the level of specificity mandated by Rule 9(b).  It provides no meaningful detail as to the circumstances of the alleged fraud, who made the misrepresentation, and the knowledge thereof.  The allegations of Count VI do not place Defendants ALJAN, API, and Walmart on notice of the precise misconduct with which they are charged.  Count VI against Defendants ALJAN, API, and Walmart will be dismissed without prejudice for Rimel to replead to the extent that she can offer sufficient detail to get over the heightened pleading requirement of Rule 9(b).

E.      **Rimel's negligence claim can proceed against Defendants.**

Rimel pleads a claim of negligence against Defendants ALJAN, API, and Walmart at Count II of her Complaint.  (ECF No. 1-2, pp. 14-17).  Defendants ALJAN and API do not ask the Court to dismiss Rimel's claim for negligence.  Only Defendant Walmart seeks dismissal of the negligence claim against it.  (ECF No. 4).  The Court holds that, at this stage, Rimel has adequately pled a claim of negligence against Walmart.  Whether Rimel will ultimately prevail on her negligence claim is a question for another day.  She may proceed to discovery on her negligence claim.  Walmart's motion to dismiss Count II will be denied.

F.      **The motion to dismiss any request for punitive damages is premature.**

Defendants ALJAN, API, and Walmart argue that the facts alleged in Rimel's Complaint, as a matter of law, do not warrant the imposition of punitive damages.  That is a question for another day.  The parties may take discovery on the facts underlying Rimel's negligence claim. The Court will determine, at the appropriate time, whether those facts rise to a level that would warrant charging the jury on punitive damages.

### III.   CONCLUSION

For the reasons set forth above, Counts, I, III, IV and V will be dismissed with prejudice. Count VI will be dismissed without prejudice and Rimel will be given leave to amend only as to Count VI within twenty-one days.  Count II will proceed against Defendants.  An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Date:   8/26/24

12